UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Tremayne Lamont Drakeford,<br><br>Plaintiff,<br><br>-versus-<br><br>Glenda Thompson; Linda Seneca; Miriam Ciccolone; Martha L Roof; Kaye Humphries; and Stephen McCarthy, are sued in their individual capacity; Associate Warden Stephen Claytor; Warden Michael McCall; Major Dennis Bush; Director Jon Ozmint; and Inspector General Dan Murphy, are sued in their individual and official capacity,<br><br>Defendants. | C. A. No. 2:09-02239-RBH-RSC<br><br>**REPORT AND RECOMMENDATION** |

This civil rights action under 42 U.S.C. § 1983[1] (West 1994 & Supp. 1998) brought by a prisoner proceeding pro se and in forma pauperis filed on August 25, 2009, is before the undersigned United States Magistrate Judge for a report and

---

[1] Section 1983, titled a civil action for deprivation of rights reads in relevant portion:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

recommendation on the defendant's motion for summary judgment. 28 U.S.C. § 636(b).

Plaintiff named various officers and employees of the South Carolina Department of Corrections (SCDC) as defendants. They are Glenda Thompson; Linda Seneca; Miriam Ciccolone; Martha L. Roof; Kaye Humphries; and Stephen McCarthy, sued in their individual capacity; as well as Associate Warden Stephen Claytor; Warden Michael McCall; and Major Dennis Bush. He also named as Defendants SCDC Director Jon Ozmint; and Inspector General Dan Murphy of the S.C. Attorney General's office, both of whom are sued in their individual and official capacities. He seeks damages and equitable relief.

In his complaint he claimed that:

> 1. His funds were frozen
>
> 2. He was not given indigent status so that he could receive basic hygiene products and legal materials
>
> 3. He was confined to segregation for 50 days
>
> 4. The defendants "committed the torts of negligence and deliberate indifference".

The defendants filed a motion for summary judgment with various affidavits and exhibits on June 22, 2010. On June 23, 2010, the plaintiff was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir.

1975). Following various extensions of time, the plaintiff opposed the motion on September 7, 2010, with his own affidavit and exhibits. Hence, it appears consideration of the motion is appropriate.

**SUMMARY JUDGMENT STANDARD**

Summary judgment should be granted when the record demonstrates that the requirements of Rule 56(c) have been met. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Where a case is "decided on summary judgment, there have not yet been factual findings by a judge or jury, and [the appellant's] version of events ... differs substantially from [the appellee's,] ... courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the ... motion." Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1774 (2007) (internal quotation marks and alterations omitted).

Summary judgment is mandated where the party opposing the motion has failed to establish the existence of an element essential to his case, and on which he bears the burden of proof. Id., 477 U.S. at 322. The party seeking summary judgment must

inform the court of the basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party, however, need not offer proof that negates the opponent's claim; rather, as to issues on which the party opposing the motion has the burden of proof at trial, the party seeking summary judgment need only point to an absence of evidence to support the opponent's claim. The party opposing summary judgment must then point to facts evidencing a genuine issue for trial. Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the plaintiff raises a "metaphysical doubt" as to the material facts. Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Likewise, "unsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). If the plaintiff's evidence does not raise a genuine issue as to a material fact, then summary judgment is proper for the defendants. See, Anderson, 477 U.S. at 249-50 (where evidence is not significantly probative, then summary judgment is proper). Furthermore, even as to a material fact, an issue is genuine only where the record establishes that the fact-finder could find, by a preponderance of the evidence, that the plaintiff is entitled to judgment in his favor. Id., 477 U.S. at 252.

## **THE PLRA'S EXHAUSTION REQUIREMENT**

The Prison Litigation Reform Act requires that a prisoner exhaust the available administrative remedies before filing a § 1983 action concerning conditions of his confinement. 42 U.S.C. § 1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended § 1997e so that it now provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Id., § 1997e(a).

The Supreme Court has held that the PLRA "seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378 (2006) (citing Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983 (2002)). Accordingly, "[a]dministrative law ... requir[es] proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so properly." Id. at 90 (internal quotation marks omitted). Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by prisoners under any federal law. Id. at 90-91. Accordingly, before a prisoner may proceed with his

5

claims in a federal court, he must first properly exhaust his administrative remedies available through the SCDC grievance policy/process.[2]

Importantly, the SCDC grievance policy provides that if, at the institutional level, the response to the grievance exceeds the established time limits, the grievance will automatically proceed to the next level of appeal where the Inmate Grievance Coordinator may respond to the prisoner and resolve his complaint. SCDC Policy GA-01.12 § 13.6. Only after completing the steps of the SCDC grievance process has a prisoner properly

---

[2] The Court may take judicial notice of the SCDC grievance process, specifically, SCDC Policy GA-01.12. As noted in Jones v. Kay, No. 07-3480, 2007 WL 4292416 (D.S.C. Dec.5, 2007), the time limits of this policy are summarized as follows:

> (1) an inmate must fill out a Form 10-5 (Step 1 Grievance) to explain his complaint and give the form to an employee designated by the Warden within fifteen (15) days of the alleged incident;
> (2) the Warden designee has nine (9) working days from the time the grievance is presented to put it into SCDC's automated system;
> (3) the Warden should respond to the grievant in writing within forty (40) days;
> (4) the inmate may appeal by completing a Form 10-5a (Step 2 Appeal) and submitting it to the Inmate Grievance Coordinator within five (5) calendar days of receipt of the response; and
> (5) a responsible SCDC official will have sixty (60) days to respond to the Step 2 Grievance plus five (5) days for the grievant to be served.

See SCDC Policy GA-01.12 (Inmate Grievance System). The decision of the "responsible official" who answers the Step 2 appeal is the Department's final response in the matter. Id.

exhausted a claim under § 1983. See, 42 U.S.C. § 1997e.

Further, exhaustion is a prerequisite to suit that must be completed prior to filing an action. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 677 (4th Cir. 2005). Thus, a SCDC prisoner must wait approximately 114 days from presenting his Step 1 Grievance to the prison to file a complaint in federal court. See, SCDC Policy GA-01.12; Jones v. Kay, No. 07-3480, at 5. If the prisoner has not received a response "[a]fter approximately 114 days have passed, he will have exhausted 'such administrative remedies as are available.'" Id. (citing 42 U.S.C. § 1997e(a)); see, e.g., Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002).

## **DISCUSSION**

A review of the record and relevant case law reveals that the action should be dismissed without prejudice for failure to comply with the Prison Litigation Reform Act's (PLRA) exhaustion requirement.

The defendants raised in their answers the affirmative defense of Plaintiff's failure to comply with the PLRA's exhaustion requirement. In their summary judgement motion the defendants again asserted that Plaintiff's failure in this regard entitled them to judgment as a matter of law.

The defendants submitted the affidavit of Inmate Grievance Coordinator Miriam Snyder concerning the plaintiff's grievance.

7

Snyder states in her affidavit that the plaintiff filed a Step 1 Grievance dated December 28, 2008, complaining of an investigation by SLED into his possible participation in a Financial Transaction Card Theft scheme which investigation caused SCDC to "freeze" his Cooper Trust Fund Account.[3] He complained also about his custody level. He indicated that he wanted "his account unfrozen and all privileges granted by my custody level restored." (Snyder Affidavit, ¶3 and ex B to the aff.). The plaintiff did not grieve his present allegation that he was denied indigent status which prevented him from obtaining hygiene packages and legal materials.

Snyder responded to the Step 1 grievance by advising the plaintiff that the SCDC institutional investigator was not handling the matter and advised Plaintiff and his family to contact the Inspector General's Office, where the investigation was being handled. Further, she advised that he should let her know if he wanted to proceed with a Step 2 grievance.

---

[3] Plaintiff's E.H. Cooper account was frozen pending a two year investigation that recovered large sums of money, drugs and electronics bought with stolen credit cards. Plaintiff was found to be in possession of unauthorized credit card numbers, other individuals' dates of birth and other personal biographical information not belonging to the Plaintiff. (See, Def. ex. A Mascio Aff., ¶ 2). Plaintiff was ultimately charged with financial transaction card theft. The defendants believed that a portion of the plaintiff's account may have been the result of criminal activities or may be used to foster criminal activities.

Plaintiff apparently did not file a Step 2 grievance but later asked for a copy of the response to the Step 1 grievance. He was provided another copy of the response in a memorandum dated April 1, 2009. (Id. ex. C). Thereafter the Plaintiff sent a Request to Staff Member dated July 6, 2009, requesting a copy of his initial grievance. Snyder responded by advising the Plaintiff that she had sent him a copy to him in February and another in a memo dated April 1, 2009. Id. Ex. D.

On April 6, 2009, a warrant was issued for the plaintiff for Financial Transaction Fraud Theft.

On July 6, 2009, Snyder received another Request to staff Member concerning this matter. The Plaintiff asked if the matter was outside of the Warden's authority since the account was not frozen at the institutional level. Snyder responded and advised the plaintiff that the Inspector General's Office was responsible for the account being frozen. She also confirmed with him that he had declined to file a Step 2 grievance. Id. ex. E.

On July 14, 2009, Plaintiff filed a second Step 1 grievance complaining that his account had been frozen for ten months and that he had been denied hygiene and legal materials. In Snyder's response she noted that he had been given a hygiene kit on August 3, 2001, and that the commissary was instructed to give him a hygiene kit every month until his account was unfrozen. Further

9

inmates without access to funds are given legal materials and access to legal copying by bringing their own paper or signing a debit form. She advised the plaintiff that he would not have been denied access to legal materials while his account was frozen. Id, ex F. Plaintiff did not file a Step 2 grievance.

On August 25, 2009, Plaintiff was arraigned in General Sessions court on Financial Transaction Fraud Theft.

According to the plaintiff, he was prevented from exhausting his administrative remedies and should be excused from the requirement. He has not submitted any proof to support his wholly conclusory statement. There is no genuine and material issue of fact which must await the decision of a fact finder.

Based on these submissions, and taken in a light most favorable to the nonmoving party, here the plaintiff, it appears that the defendants have carried their burden to show that Plaintiff did not properly exhaust his administrative remedies.

## CONCLUSION

Accordingly, for the aforementioned reason, it is recommended that the action be dismissed without prejudice.

Respectfully Submitted,

*Robert S Carr*

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
October __1__, 2010

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within **fourteen (14) days** of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985).