IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Tremayne Lamont Drakeford, | ) | Civil Action No.: 2:09-cv-02239-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Glenda Thompson, Linda Seneca, | ) | |
| Miriam Ciccolone, Martha L. Roof, | ) | |
| Kaye Humphries, and Stephen McCarthy, | ) | |
| sued in their individual capacity; | ) | |
| Associate Warden Stephen Claytor, | ) | |
| Warden Michael McCall, Major Dennis | ) | |
| Bush, Director Jon Ozmint, Inspector | ) | |
| General Dan Murphy, sued in their | ) | |
| individual and official capacity; | ) | |
| | ) | |
| Defendants. | ) | |
|_____ | ) | |

Plaintiff, a state prisoner proceeding *pro se*, brought this suit pursuant to 42 U.S.C. § 1983. This matter is before the court with the [Docket Entry 41] Report and Recommendation ("R & R") of United States Magistrate Judge Robert S. Carr[1] filed on October 1, 2010.

## Background

On August 25, 2009, Plaintiff filed his Complaint in this § 1983 action seeking both monetary damages and equitable relief. In this action, Petitioner claims the following: (1) that his funds were frozen, (2) that he was not given indigent status so that he could receive "basic hygiene and legal materials afforded to inmates that are indigent," (3) that he was confined to segregation without due process, and (4) that Defendants committed "the torts of negligence and deliberate indifference." [Docket Entry 1-2] at 4.

---

[1] This matter was referred to Magistrate Judge Carr pursuant to 28 U.S.C. § 636(b) and Local Rule 73.02, (D.S.C.).

On June 22, 2010, Defendants filed their [Docket Entry 25] Motion for Summary Judgment, along with a memorandum in support of that motion. Because Plaintiff is proceeding *pro se*, the court issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on June 23, 2010, advising Plaintiff of the motion for summary judgment procedure and the possible consequences if he failed to adequately respond. After multiple extensions of time, Plaintiff timely filed his [Docket Entry 39] Response in Opposition to the summary judgment motion on September 2, 2010.[2]

On October 1, 2010, the Magistrate Judge entered his R & R, in which he recommends that the undersigned grant Defendants' summary judgment motion on the basis of failure to exhaust. Plaintiff timely filed objections to the R & R on October 18, 2010.[3]

## Standard of Review

The Magistrate Judge makes only a recommendation to the court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the court need not conduct a *de novo*

---

[2] Filing date under *Houston v. Lack*, 487 U.S. 266 (1988) (stating that a prisoner's pleading is filed at the moment of delivery to prison authorities for forwarding to district court).

[3] Filing date under *Houston v. Lack*, 487 U.S. 266.

2

review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a timely filed, specific objection, the Magistrate Judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

**Discussion**

Under the Prison Litigation Reform Act ("PLRA"), a prisoner is required to exhaust his administrative remedies before filing an action concerning the conditions of his confinement. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This provision is mandatory, and prisoners must exhaust all available remedies, even those where the relief requested cannot be granted administratively. *Booth v. Churner*, 532 U.S. 731, 741 (2001); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). Exhaustion is also now required in all suits challenging prison conditions, not just suits brought under § 1983. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner must complete the administrative review process and meet all applicable deadlines in order to satisfy the requirement of exhaustion of administrative remedies. "Proper exhaustion" is now required. *Woodford*, 548 U.S. at 93.

"[A]n inmate is not required to allege exhaustion of remedies in his § 1983 prison-conditions complaint." *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). Rather, the exhaustion requirement is an affirmative defense which the defendants have the burden to plead

and prove. *Id.*

In the case *sub judice*, Defendants raised the affirmative defense of failure to exhaust in both their [Docket Entry 22] Answer and Motion for Summary Judgment. Additionally, in his R & R, the Magistrate Judge recommended that the summary judgment motion should be granted based on Plaintiff's failure to exhaust his available administrative remedies. R & R at 10. Essentially, both Defendants and the Magistrate Judge note the fact that Plaintiff filed Step 1 Grievances, but failed to file any Step 2 Grievances, thus concluding that Plaintiff failed to fully grieve or exhaust the issues in his Complaint. On the other hand, Plaintiff contends that he did, in fact, exhaust all available administrative remedies.

Before analyzing whether Plaintiff properly exhausted his claims, it is important to take notice of the South Carolina Department of Corrections ("SCDC") administrative remedy process.

> In order to exhaust the SCDC administrative remedy, an inmate must fill out a Form 10-5 (Step 1 Grievance form) about the matters raised in his grievance and give the form to the Institutional Inmate Grievance Coordinator within fifteen (15) days of the alleged incident of which the inmate complains. The grievance coordinator has nine (9) days from the time the grievance is presented by the inmate to put it into SCDC's automated system. Once the grievance is properly entered into the SCDC automated system, the Warden should then respond to the Step 1 grievance in writing within forty (40) days. If the inmate is not satisfied with the Warden's response, then, within five (5) days, he or she must file an appeal of the Step 1 grievance response by filing a Form 10-5a (Step 2 Appeal) to the Responsible Official with the Inmate Grievance Coordinator. A responsible SCDC official will then have sixty (60) days to respond to the Step 2 grievance. The decision of the "responsible official" who answers Step 2 is the Department's final response in the matter.

*Finch v. McCormick Corr. Inst.*, No. 4:07-0759-MBS-TER, 2008 WL 2076673, at *3 (D.S.C. May 8, 2008); *see also* SCDC Policy/Procedure GA-01.12, at §§ 13.1 to 13.5 (Jan. 1, 2006). Importantly, the SCDC policy provides that "[i]f, at the institutional level, the response to the grievance exceeds

4

the established time limits, the grievance will automatically proceed to the next level of appeal." SCDC Policy § 13.6. Accordingly, even if the warden fails to respond to an inmate's Step 1 grievance within the time permitted under the SCDC Policy, the inmate must refrain from filing suit in federal court until all time periods for both steps to be completed have expired (approximately 114 days or four (4) months). *See Finch*, 2008 WL 2076673, at *4.

The court will now turn to Plaintiff's argument that he exhausted his claims[4] in this matter. On December 28, 2008, Plaintiff filed a Step 1 grievance complaining of an ongoing investigation that resulted in his account being frozen and complaining of his custody level at the time. *See* Dec. 28 Grievance [Docket Entry 25-10]; *see also* Snyder Aff. [Docket Entry 25-9] at 1. In addition, Plaintiff filed a second Step 1 grievance on July 14, 2009. *See* July 14 Grievance [Docket Entry 25-14]. In the July 14 Grievance, Plaintiff complained that he had been "denied hygiene and legal materials." *Id.* Plaintiff did not file any Step 2 grievances.

The court agrees with the Magistrate Judge that Plaintiff clearly failed to exhaust the claims contained in the July 14 Grievance–i.e., that he had been denied hygiene and legal materials. As noted above, Plaintiff filed this grievance on July 14, 2009. On August 24, 2009, Miriam Snyder, the Inmate Grievance Coordinator, responded to the July 14 Grievance as follows:

> You [Plaintiff] were given a hygiene kit on 8/3/09 and I [Snyder] have instructed Commissary to give you one every month until your Cooper account is unfrozen. Regarding your legal copying, Lt. Gorman will make copies for you on your dorm's designated legal copying day if you either bring your own paper or sign a debit form. Accordingly, I am closing this grievance as resolved.

---

[4] As noted above, Plaintiff claims that his funds were frozen, that he was not given indigent status so that he could receive "basic hygiene and legal materials afforded to inmates that are indigent," that he was confined to segregation without due process, and that Defendants committed negligence and deliberate indifference in relation to these claims. [Docket Entry 1-2] at 4.

5

*Id.* Although Snyder stated that she considered the July 14 Grievance "resolved," it appears that Plaintiff was not satisfied with this response, as evidenced by the fact Plaintiff still filed this suit in federal court based in part on the alleged denial of hygiene and legal materials. If Plaintiff was not satisfied with the prison's response to his Step 1 grievance, he was required to file a Step 2 grievance appealing that decision. However, Plaintiff did not file a Step 2 grievance. Moreover, even if Plaintiff had not received a response to his July 14 Step 1 Grievance, he was required to wait at least 114 days from July 14, 2009, before filing suit in federal court. *See Finch*, 2008 WL 2076673, at *4; *see also* SCDC Policy § 13.6. Plaintiff also failed to do this. Rather, Plaintiff filed this suit on August 25, 2009, only one (1) day after he received the prison's response to his July 14 Step 1 Grievance. Accordingly, the court agrees with the Magistrate Judge that Plaintiff failed to exhaust his claims regarding the denial of hygiene kits and legal materials.

The Magistrate Judge also found that Plaintiff failed to exhaust his claims[5] included in the Step 1 Grievance filed on December 28, 2008. In response to the December 28 Grievance, Snyder informed Plaintiff that the SCDC's institutional investigator was not handling the investigation. Snyder Aff. at 1. Further, Snyder responded, "if you [Plaintiff] want a Warden's response to this effect so you can proceed with a Step 2, let me know." Dec. 28 Grievance. Plaintiff never filed a Step 2 grievance regarding these complaints. Defendants contend that Plaintiff failed to exhaust his administrative remedies because he "declined to file a Step 2 Grievance." Memo. in Supp. of Summ. J. [Docket Entry 25-1] at 4. Defendants cite Snyder's Affidavit, in which she stated that, in a response to a staff request sent by Plaintiff, she "confirmed with [Plaintiff] that he had declined to

---

[5] The December 28 Grievance included Plaintiff's claims relating to the freezing of his prison trust account and his custody level at the time.

6

file a Step 2 Grievance." Snyder Aff. at 2; *see also* July 6 Request [Docket Entry 25-13] ("I [Snyder] offered to get you [Plaintiff] a Warden's response so you could file a Step 2 and you declined."). Plaintiff, on the other hand, unpersuasively argues in his objections that he sought to file a Step 2 grievance regarding these claims. While Plaintiff contends in his [Docket Entry 39-1] Affidavit that he "sent a staff request to I.G.C. for a Warden response to proceed with step 2 because [he] was not satisfied with her response," there is no evidence in the record supporting such a conclusory assertion. *See Larken v. Perkins*, 22 F. App'x 114, 115 n.* (4th Cir. 2001) (noting that non-movant's "own, self-serving affidavit containing conclusory assertions and unsubstantiated speculation, . . . [is] insufficient to stave off summary judgment"); *see also Fuller v. Cnty. of Charleston*, 444 F. Supp. 2d 494, 499 (D.S.C. 2006) ("It is well established that a court does not abuse its discretion by striking portions of a party's affidavit consisting of conclusory statements or self-serving opinions without objective corroboration."). As a matter of fact, Plaintiff refers the court to "Exhibit B" while arguing in his [Docket Entry 39] Memorandum in Opposition to Summary Judgment that he sent a staff request in an attempt to proceed with Step 2, but any such exhibit is notably absent from the record. Accordingly, it appears that Plaintiff did not fully exhaust these grievances as he failed to file a Step 2 grievance.[6]

---

[6] The court notes that Plaintiff also argues, in his objections, that Defendants "should be estopped from raising non-exhaustion as an affirmative defense." Obj. at 2. Plaintiff's objections direct the court to page two (2) of his Memorandum in Opposition to Summary Judgment, in which he cites *James v. Davis*, No. 9:05-2733-DCN-GCK, 2006 WL 2171082 (D.S.C. July 31, 2006). In *James*, the district court noted that "[d]efendants may . . . . be estopped from raising non-exhaustion as an affirmative defense when prison officials inhibit an inmate's ability to utilize grievance procedures." *Id.* at *16 (internal quotations and citations omitted). While the court agrees that defendants may be estopped from raising non-exhaustion in certain instances, such circumstances warranting estoppel are not present in this matter. First, Plaintiff's conclusory allegation that Defendants "inhibited" his ability to follow the grievance procedures is insufficient to warrant estoppel. Second, the district court in *James* found that prison officials had "inhibited or blocked" the plaintiff's attempts to utilize the grievance procedures by returning his grievances unprocessed. *Id.* However, in our case, the evidence in the record reveals that Plaintiff did, in fact, have the ability to use the SCDC's grievance procedures. Plaintiff filed two (2) separate Step 1 grievances, and the

Nevertheless, out of an abundance of caution, the court has reviewed those claims included in the December 28 Grievance and finds that they are without merit. Plaintiff first claims that Defendants unconstitutionally froze his Cooper prison account.[7] *See* Memo. in Opp. at 4. "A prisoner has a protected interest in his prison trust account." *Burks v. Pate*, 119 F. App'x 447, 450 (4th Cir. 2005). However, the United States Supreme Court has held that "the Fourth Amendment has no applicability to a prison cell." *Hudson v. Palmer*, 468 U.S. 517, 536 (1984). Further, the United States Supreme Court, in *Hudson*, also noted that "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.* at 528 n.8. This reasoning applies by analogy to money in prison trust accounts that could be the result of a prisoner's alleged criminal activity. In this case, Plaintiff does not dispute that there was an ongoing investigation into alleged criminal activity of Plaintiff. Prison officials were also aware that Plaintiff's prison account was frozen due to this investigation. *See* Email, Exhibit A-1 [Docket Entry

---

prison, via Snyder, responded to both. Moreover, in response to the December 28 Grievance, Snyder even informed Plaintiff to let her know if he wanted to proceed with a Step 2 grievance. *See* Dec. 28 Grievance. Accordingly, even though Plaintiff did not file a Step 2 grievance in either instance, the court finds that Plaintiff has not shown that Defendants inhibited or prevented him from filing a Step 2 grievance, and therefore estoppel is not warranted.

[7] The court notes that Plaintiff also contends that Defendants took approximately $808.30 out of his Cooper prison trust account. *See* Memo. in Opp. at 4. However, this claim should be dismissed without prejudice for failure to exhaust. Although Plaintiff complained about his prison account being frozen, there was no mention in the grievances of any monies being taken out of the account. Therefore, even if Plaintiff had exhausted the claims included in his December 28 and July 14 grievances, which the court finds he has not, this claim regarding the $808.30 would not be exhausted due to the fact Plaintiff did not include it in either of those grievances.

In the December 28 Step 1 Grievance, Plaintiff alleged that his "account ha[d] been frozen and [his] funds seized," and he sought to have his account "unfrozen." Dec. 28 Grievance. Thereafter, in two subsequent requests to a staff member, Plaintiff discussed his initial grievance regarding his funds being frozen, and Plaintiff did not make mention of any monies being removed from the account. *See* Exhibit D [Docket Entry 25-12] ("I'm requesting a copy of my initial grievance filed with your office about withholding my funds . . . ."); *see also* Exhibit E [Docket Entry 25-13] ("I'm requesting to know whether or not you remember our initial meeting about my account be[ing] frozen . . . ."). Finally, in Plaintiff's July 14 Step 1 Grievance, Plaintiff once again grieved that his "account [had been] frozen for the past (10) months." July 14 Grievance. Accordingly, Plaintiff's claim regarding the $808.30 should be dismissed as it was never properly grieved and exhausted. *See* 42 U.S.C. § 1997e(a).

8

25-6] ("Drakeford's EH Cooper account was frozen by investigators due to an investigation of suspected criminal activity with a large number of inmates to include Drakeford."); *see also* Bush's Aff. [Docket Entry 25-2] ("I am aware that the Plaintiff's Cooper account was frozen due to an ongoing investigation."). Ultimately, an arrest warrant was issued charging Plaintiff with financial transaction card theft.[8] *See* Warrant [Docket Entry 25-5]. The court finds that this freezing of Plaintiff's account pending the ongoing criminal investigation was not unconstitutional under these particular circumstances. *See Hentz v. Ceniga*, No. 08-157-MO, 2009 WL 5436846, at *10 (D. Or. March 3, 2009) ("Here, the money was only temporarily 'frozen' before it was properly determined to be contraband . . . and then lawfully confiscated. In such a case, it makes sense to treat the seizure like one in a prison cell, to which the Fourth Amendment gives no protection."). Moreover, Plaintiff's claims do not give rise to a due process violation. Other district courts have held that "procedural due process is satisfied where prison grievance procedures are available to evaluate a plaintiff's challenge to the withdrawal from his account . . . ." *Priest v. Hodge*, No. 1:08-cv-98, 2008 WL 5501114, at *1 (E.D. Va. Feb. 29, 2008). As discussed above, *supra* note 6, SCDC grievance procedures were available to Plaintiff, which he utilized by his December 28 Grievance. Accordingly, the court finds that Defendants' actions did not violate Plaintiff's procedural due process as to this claim.

Plaintiff also alleges that his placement in administrative segregation violated his constitutional rights. "In order to prevail on a . . . due process claim, Inmates must first demonstrate

---

[8] According to the Arrest Warrant, Plaintiff had "in his possession one or more credit cards that did not belong to him. [Plaintiff] also had in his possession numerous social security numbers, dates of births and other personal biographical information that did not belong to him." Further, the Arrest Warrant stated that the "case [was] one that ha[d] been going on for two years and ha[d] recovered large sums of money, drugs, and electrocins [sic] that were bought with stolen credit cards."

that they were deprived of 'life, liberty, or property' by governmental action." *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). The United States Supreme Court, in *Sandin v. Connor*, 515 U.S. 472 (1995), found that "segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 486. The Fourth Circuit has likewise held that "changes in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and] are contemplated by his original sentence to prison . . . ." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). Accordingly, Plaintiff's allegation of placement in administrative segregation, without more, does not give rise to a constitutional claim.

While Plaintiff appears to concede the same,[9] he additionally alleges that he lost his ability to earn good-time and work credits due to his placement in administrative segregation. Specifically, Plaintiff stated the following:

> Pursuant to state statutory law, Plaintiff retains a right to earn deductions in his sentence for good time unless punished for misbehavior . . . . However during the 50 days that plaintiff was held in administrative segregation on[]investigation the Defendants refused to allow deductions in his sentence for good time and work credits. During those 50 days plaintiff was not being punished for any misbehavior and thus by state law deductions in his sentence for good time was mandatory.

Memo. in Opp. at 6. The court initially notes that it does not appear Plaintiff ever grieved this issue, and therefore the claim should be barred for failure to exhaust. There is no mention of good-time credits or work credits in Plaintiff's Step 1 grievances. Regardless, and more importantly, "[t]he opportunity to earn good time credits is not a constitutionally established liberty interest." *Holmes*

---

[9] The court notes that in his Memorandum in Opposition to Summary Judgment, Plaintiff stated that "placement in administrative segregation does not normally violate a prisoner's constitutional rights." Memo. in Opp. at 6.

10

*v. Cooper*, 872 F. Supp. 2d 298, 302 (W.D. Va. 1995) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)); *see also Gaskins v. Johnson*, 443 F. Supp. 2d 800, 805 (E.D. Va. 2006) ("Thus, his drug infraction resulted in reducing the good-time credits he might earn *in the future*; . . . This distinction is important because prisoners have no liberty interest in obtaining or retaining a specific prison classification level to allow them to obtain an early release."); *Delaney v. Ozmint*, No. 4:05-1968-HFF-TER, 2006 WL 1878982, at *8 (D.S.C. July 5, 2006) (Plaintiff cannot show that he has a protected interest in earning good-time or work credits."). Accordingly, Plaintiff's claim regarding good-time and work credits is also without merit.

Finally, to the extent that any prison officials have been sued in their individual capacities, they are entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A claim of qualified immunity is evaluated using a three-prong analysis. First, the court must determine "whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, the court must "inquire whether at the time of the alleged violation [the right] was clearly established." *Collinson v. Gott*, 895 F.2d 994, 998 (4th Cir. 1990) (Phillips, J., concurring). Third, the court must determine whether a "reasonable person in the official's position would have known that his conduct would violate that right." *Id.*; *see also Pearson v. Callahan*, 129 S. Ct. 808, 823 (2009) (holding that an official should be shielded from personal liability when the "officer reasonably believes that his or her conduct complies with the law"). Recently, the United States Supreme Court has held that district courts and courts of appeals should

be permitted to exercise their sound discretion in deciding which of the prongs should be addressed first in light of the circumstances of the particular case. *See Pearson*, 129 S. Ct. at 818. In this case, as discussed above, the court has already determined that Defendants did not violate any of Plaintiff's constitutional rights. In addition, other courts in similar cases have found the defendants to be entitled to the qualified immunity defense. *See Hentz*, 2009 WL 536846, at *10 ("[W]hether the Fourth Amendment prohibits the temporary freezing of assets in a prisoner's trust account pending an investigation . . . is . . . at least unclear. Defendants are therefore entitled to summary judgment on these claims because they have qualified immunity."). Accordingly, the court finds that Defendants are entitled to qualified immunity based on the fact no constitutional violations occurred.

## **Preliminary Injunction**

In his prayer for relief, Plaintiff seeks a preliminary injunction in the form of a transfer to either the Utah Department of Corrections or the North Carolina Department of Corrections. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that he balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008). Other than Plaintiff's conclusory allegation that he "fears for his safety,"[10] he has not made a showing that he is likely to suffer any irreparable harm in the absence of an injunction. Moreover, because summary judgment should be granted as to Plaintiff's claims, he cannot show a likelihood of success on the merits; therefore, his request for a preliminary injunction should be denied accordingly.

---

[10] *See* Compl. at 9.

**Conclusion**

Based on the foregoing, the court hereby overrules all of Plaintiff's objections and adopts in part the R & R of the Magistrate Judge. Accordingly, Plaintiff's claims included in his July 14, 2009 Grievance and Plaintiff's claims regarding the $808.30 removed from his prison trust account are **DISMISSED** *without prejudice* for failure to exhaust. Moreover, Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's claims included in his December 28, 2008 Grievance, and those claims are hereby **DISMISSED** *with prejudice*. Finally, Plaintiff's request for a preliminary injunction is **DENIED**.

    **IT IS SO ORDERED.**

                                                    s/R. Bryan Harwell  
                                                    R. Bryan Harwell  
                                                    United States District Judge

Florence, South Carolina  
November 24, 2010